1

2

3

4

5

6            **UNITED STATES DISTRICT COURT**

7            **EASTERN DISTRICT OF CALIFORNIA**

8
**M.J., a minor, by and through**          1:05-CV-00927 OWW LJO
9  **his parents, G.J. and J.J.,**
                                           **ORDER GRANTING DEFENDANT'S**
10                      **Plaintiff,**     **MOTION TO DISMISS.**

11            **v.**

12 **CLOVIS UNIFIED SCHOOL DISTRICT,**

13                      **Defendants.**

14

15

16

17                 **I.   INTRODUCTION**

18      Plaintiff, a minor with special education needs, filed this

19 lawsuit on July 18, 2005, originally seeking a declaratory

20 judgment that Defendant Clovis Unified School District ("CUSD")

21 breached a settlement agreement Plaintiff and CUSD entered into

22 in the course of a special education due process proceeding,

23 conducted pursuant to the Individuals with Disabilities in

24 Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.* (Doc. 10,

25 First Am. Compl., filed Aug. 30, 2005.)  The original complaint

26 was dismissed, but Plaintiff sought and was granted leave to

27 amend to allege a "stay put" claim under IDEA.  (Doc. 32, filed

28 Sept. 15, 2006.)

                           **1**

1     Plaintiff filed an amended complaint on October 5, 2006,
2  which does not allege a "stay put" claim.  Rather, Plaintiff now
3  alleges that Defendant Clovis Unified School District ("CUSD")
4  (1) violated the Individuals with Disabilities in Education Act,
5  as amended in 2005, ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*, by
6  failing to provide Plaintiff with a Free and Appropriate Public
7  Education ("FAPE"); (2) violated Section 504 of the
8  Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), by
9  subjecting Plaintiff to a "one size fits all" educational
10  program, rather than an individualized program, and by exhibiting
11  a "pattern, policy and practice" of failing to address the
12  individualized needs of its students with autism; (3) violated
13  Title II of the Americans With Disabilities Act ("ADA"), 42
14  U.S.C. § 12131, et seq., by, among other things, maintaining a
15  pattern, policy and practice of failing to address the
16  individualized needs of its students with autism; and (4)
17  violating California's Unruh Civil Rights Act, Cal. Civ. Code
18  § 51, by subjecting Plaintiff to the discriminatory practice of
19  denying Plaintiff the benefits of CUSD's special education
20  instruction and services.  Finally, Plaintiff once again seeks
21  declaratory relief that CUSD District ("CUSD") breached the
22  settlement agreement.
23     Defendant moves to dismiss the second amended complaint,
24  first arguing that Plaintiff was only granted leave to amend to
25  add a "stay put" claim.  Alternatively, Defendant moves for
26  dismissal on a number of grounds, including: (1) that Plaintiff's
27  declaratory relief claim fails for the same reasons it was
28  previously dismissed; (2) Plaintiff failed to exhaust his

**2**

1    administrative remedies prior to bringing his claims under IDEA;

2    (3) Plaintiff fails to state a claim under either Section 504 or

3    the ADA; and (4) Plaintiff's Unruh Act claim fails for, among

4    other things, lack of exhaustion. (Doc. 34, filed Oct. 16, 2006.)

5

6                        **II.   BACKGROUND**

7         M.J. resides in the Clovis Unified School District ("CUSD")

8    within Fresno County.  In 1999, a CUSD psychologist determined

9    that M.J. is "autistic-like," which qualified M.J. for special

10   education services under the IDEA and California special

11   education laws.  (Doc. 33 at ¶7.)

12        In December 2001, Plaintiff's fifth grade year, an

13   Individualized Education Program ("IEP") team assembled by CUSD

14   recommended that Plaintiff be referred to Fresno County

15   Department of Children and Family Services ("FCDCFS") for mental

16   health services. (*Id*. at ¶8.)  In 2002, this recommendation was

17   incorporated into Plaintiff's IEP. (*Id*. at ¶9.)  In an

18   assessment conducted by FCDFS, Plaintiff was diagnosed with

19   "anxiety disorder" and secondary diagnosis of "Asperger's,"

20   "ADHD," "Tourette's," and "ODD" (oppositional defiance disorder).

21   FCDCFS recommended that Plaintiff's services should consist of

22   "talk therapy," which allows Plaintiff to express to a therapist

23   those issues that might be leading to his behavioral problems.

24   (*Id*.)

25        In February 2002, FCDFS provided a mental heath assessment

26   report on Plaintiff to CUSD, indicating that Plaintiff's

27   treatment would consist of "outpatient mental health treatment"

28   and that his relevant history included "symptoms of anxiety and

                                  **3**

1   ADHD."  Plaintiff's autism was <u>not</u> noted as being relevant to the

2   provision of services.  (*Id*. at ¶10.)

3       In 2002, CUSD conducted its triennial evaluation, confirming

4   that Plaintiff's diagnosis was "autism" and that Plaintiff's

5   language skills ranged from "low to high average."  CUSD's

6   language specialist noted that "[h]is receptive vocabulary is low

7   for his age, which affects his ability to understand, process and

8   express information."  (*Id*. at ¶11.)

9       During Plaintiff's sixth grade year, the IEP team placed

10  Plaintiff in CUSD's Elementary Intervention Program ("EIP"),

11  primarily designed to serve severely emotionally disturbed

12  students.  This placement was made in part because of Plaintiff's

13  behavioral problems, which Plaintiff alleges are the result of

14  his autism.  The EIP program required Plaintiff to receive

15  specific, pre-determined services, without adapting those

16  services to Plaintiff's needs as a child with autism.  (*Id*. at

17  ¶12.)  Participation in the EIP also required Plaintiff's

18  continuous referral to FCDCFS, an agency which Plaintiff alleges

19  has a "policy and practice of refusing to diagnose a child with

20  Autism and thus to provide appropriate services designed to

21  address the needs of an Autistic child."  (*Id*. at ¶12.)  Despite

22  Plaintiff's participation in the EIP and continued referral to

23  FCDCFS, CUSD and Plaintiff's parents reported increases in the

24  frequency and severity of Plaintiff's behavior problems.  (*Id*. at

25  ¶12.)

26      In January 2003, the second half of Plaintiff's sixth grade

27  year, CUSD suggested Plaintiff's parents home school Plaintiff.

28  The parents did so for the remainder of the school year.  (*Id*. at

**4**

1  ¶13.)  Although home schooling resulted in some improvements,

2  Plaintiff's parents felt that home schooling increased

3  Plaintiff's isolation from his peers.  (*Id.* at ¶14.)  Plaintiff

4  was subsequently re-enrolled in a CUSD school for his seventh

5  grade.  (*Id.* at ¶14.)

6      During Plaintiff's seventh grade year, the IEP team placed

7  Plaintiff in CUSD's Intermediate Intervention Program ("IIP").

8  Like EIP, IIP is designed for students with severe emotional

9  disturbances.  Plaintiff alleges the IIP also provided services

10 that "were inappropriate for Plaintiff's disabilities," including

11 a mandatory referral to FCDCFS, despite the fact that FCDCFS

12 refused to diagnose the disability of autism and thus to provide

13 services appropriate for Plaintiff's disability.  (*Id.* at ¶15.)

14 Throughout his seventh grade year, Plaintiff's parents continued

15 to receive reports from CUSD that Plaintiff's behavior problems

16 increased in frequency, intensity and duration.  (*Id.* at 16.)

17     M.J.'s parents pursued a due process proceeding against both

18 CUSD and FCDCFS before the California Special Education Hearing

19 Office on January 27, 2005.  On the first day of the hearing,

20 before the hearing was concluded, Plaintiff entered into a

21 settlement agreement with CUSD, and CUSD was dismissed as a

22 defendant.  (*Id.* at ¶18.)[1]

23     Thereafter, Plaintiff alleges that CUSD failed to

24

25     [1]    The Hearing Officer subsequently ruled against FCDCFS,
   finding that it failed to comply with the IDEA.  Unsatisfied with
26 the relief ordered by the Hearing Officer, Plaintiff, through his
   parents, sought review of the decision in this court.  In late
27 December 2005, Plaintiff reached a settlement with the FCDCFS,
   which was subsequently dismissed from this suit.  (*See* Doc. 28,
28 filed Dec. 20, 2005.)

adhere to its obligations under the settlement agreement.
Subsequently, an IEP meeting was convened, at which time CUSD
offered virtually the identical services and placement options
that had been the subject of the due process proceeding.  (*Id*. at
20.)

Plaintiff alleges that, as a result his "Parents were forced
out of the CUSD system and to this date Plaintiff has yet to
receive the [FAPE]."  (*Id*.)

### III.   STANDARD OF REVIEW

#### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction (Fed. R. Civ. Pro 12(b)(1)).

"Federal courts are courts of limited jurisdiction. They
possess only that power authorized by Constitution and
statute....It is to be presumed that a cause lies outside this
limited jurisdiction, and the burden of establishing the contrary
rests upon the party asserting jurisdiction." *Kokkonen v.
Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)(internal
citations omitted); *see also Tosco Corp. v. Communities for a
Better Environment,* 236 F.3d 495, 499 (9th Cir. 2001)(plaintiff
bears the burden of proving subject matter jurisdiction).

A motion to dismiss on jurisdictional grounds can be "either
facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.
2000).  In a facial attack, a court must "take all of the
allegations of material fact stated in the complaint as true and
construe them in the light most favorable to the nonmoving
party." *See Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir.
2002).  In a factual challenge, "a court may look beyond the

**6**

complaint to matters of public record without having to convert the motion into one for summary judgment...It also need not presume the truthfulness of the plaintiffs' allegations."  *White,* 227 F.3d at 1243.

**B.   Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. Pro 12(b)(6))**.

A complaint may be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Simpson v. AOL Time Warner Inc.,* 452 F.3d 1040, 1046 (9th Cir. 2006).  Alternatively, dismissal can be based on the lack of a cognizable legal theory. *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).  In evaluating such a motion "[a]ll allegations and reasonable inferences are taken as true, and the allegations are construed in the light most favorable to the non-moving party, but conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Simpson,* 452 F.3d at 1046.

**IV.   DISCUSSION**

**A.   The Scope of the Leave to Amend Granted Plaintiff**.

Defendant first argues that Plaintiff did not have leave to amend to add any claims other than a "stay put claim."  Plaintiff responds that "both the Court's statements at the hearing on Defendant's motion to dismiss... and the order granting Defendant's motion provided leave for Plaintiff to amend to allege any and all causes of action that he might have against

Defendant." (Doc. 39 at 1 n.1.)  Plaintiff is incorrect.  The
order granting Defendant's prior motion to dismiss first found
that the district court did not have subject matter jurisdiction
over the <u>only then-remaining</u> claim, Plaintiff's request for a
declaratory judgment that the settlement agreement had been
breached.  (Doc. 32 at 3-8.)  The court then analyzed Plaintiffs'
specific request for leave to amend his complaint to assert a
motion to stay put, pursuant to 20 U.S.C. § 1415(j).  While
finding "persuasive" CUSD's suggestion that it would be futile
for Plaintiff to bring a stay put claim, the district court
concluded:

> Nevertheless, it is impossible to determine in the
> abstract whether any of these arguments will ultimately
> operate to bar Plaintiff's proposed stay put claim. In
> view of the liberal policy favoring amendment and
> because unintended delay by the court in issuing this
> ruling should not prejudice either party, Plaintiff is
> granted leave to amend his complaint.

### [] CONCLUSION

> For the reasons set forth above, CUSD's motion to
> dismiss is **GRANTED WITH LEAVE TO AMEND.**  Any amendment
> shall be filed with twenty (20) days following the date
> of service of this decision.

Although the language used under the conclusion heading is
generic, the reasoning of the order expresses the intent to grant
Plaintiff leave to allege only a stay put claim.

Nevertheless, Plaintiff correctly notes that during oral
argument on the first motion to dismiss, the district court
tentatively indicated an intent to grant Plaintiff broader leave
to amend as to all claims.  (Transcript of Oct. 31, 2005 hearing,
at 13-16.)  Therefore, it is appropriate to construe Plaintiff's

opposition to this second motion to dismiss as a motion for leave to amend his complaint.  Federal Rule of Civil Procedure 1(a)5 explains that leave to amend "shall be freely given when justice so requires."  For example, leave to amend is warranted where there has been an intervening change in the applicable law.  *See* *Wilcox v. First Interstate Bank, N.A.*, 815 F.2d 522, 530 (9th Cir. 1987).

Here, Plaintiff suggests that there has been a change in law since he filed his first amended complaint.  Specifically, Congress amended the IDEA in 2005 to include certain provisions regarding federal court jurisdiction over certain types of special education settlement agreements.  *See* 20 U.S.C. § 1415(e)(2)(F).  Although Defendant disputes whether these amendments apply to the settlement agreement in this case, the change in law justifies at least examining whether the new amendments change the jurisdictional analysis.  Treating Plaintiff's arguments regarding the existence of new law as a motion for leave to amend, amendment is justified and analysis of the merits of the motion to dismiss as to all claims is warranted.

Assuming, arguendo, that the district court has jurisdiction to adjudicate the declaratory judgment claim and further assuming that the settlement agreement is set aside, the district court might have jurisdiction to adjudicate some, if not all, of Plaintiff's IDEA, Section 504, ADA, and Unruh act allegations.  Whether the declaratory relief claim, or any of the other claims, survive this motion to dismiss is discussed below.

**B.**   **Motion to Dismiss**.

**1.   Declaratory Relief Re: Breach of Settlement Agreement.**

The district court previously found that it did not have jurisdiction over Plaintiff's declaratory judgment claim, concluding that the claim was essentially a state law claim for breach of contract.  (Doc. 32 at 4.)  Plaintiff now reasserts essentially the same claim, relying on the 2005 amendments to the IDEA.  Although it is not entirely clear on which provision(s) Plaintiff relies, in a cryptic footnote, Plaintiff points to 20 U.S.C. § 1415(f)(1)(B)(ii).  (Doc. 39 at 6.)  To understand what this provision means, it is helpful to consider it in the context of the amended section as a whole, which sets up several alternative means of dispute resolution.  First, subsection (e) describes a mediation system:

(e) Mediation

    (1) In general

    Any State educational agency or local educational agency
    that receives assistance under this subchapter shall
    ensure that procedures are established and implemented
    to allow parties to disputes involving any matter,
    including matters arising prior to the filing of a
    complaint pursuant to subsection (b)(6) of this section,
    to resolve such disputes through a mediation process.

    (2) Requirements

    Such procedures shall meet the following requirements:
     (A) The procedures shall ensure that the mediation
    process--
        (i) is voluntary on the part of the parties;
        (ii) is not used to deny or delay a parent's right to
    a due process hearing under subsection (f) of this
    section, or to deny any other rights afforded under
    this subchapter; and
        (iii) is conducted by a qualified and impartial
    mediator who is trained in effective mediation
    techniques.
                         ***

10

1

2

3      (F) Written agreement

        In the case that a resolution is reached to resolve the
        complaint through the mediation process, the parties
        shall execute a legally binding agreement that sets
        forth such resolution and that--
4          (i) states that all discussions that occurred during
           the mediation process shall be confidential and may not
5          be used as evidence in any subsequent due process
           hearing or civil proceeding;
6          (ii) is signed by both the parent and a representative
           of the agency who has the authority to bind such
7          agency; and
           (iii) <u>is enforceable in any State court of competent</u>
8          <u>jurisdiction or in a district court of the United</u>
           <u>States</u>.
9
                                  ***
10
11   20 U.S.C. § 1415(e)(emphasis added).  The underlined portion

12   explains that, if a resolution is reached through mediation, the

13   parties must execute an agreement that, among other things, is

14   "enforceable in any...district court of the United States."

15   Prior to the 2005, amendments, the language of subsection (e) was

16   substantially similar to its current form, <u>except that the</u>

17   <u>language conferring jurisdiction upon the federal district courts</u>

18   <u>to enforce settlement agreements reached through the mediation</u>

19   <u>process was not present</u>.  *See* P.L. 105-17 (June 4, 1997).

20       Plaintiff directly relies upon similar language found in

21   sub-section (f), which provides in pertinent part:

22     (f) Impartial due process hearing

23       (1) In general

24       (A) Hearing

25       Whenever a complaint has been received under subsection
         (b)(6) or (k) of this section, the parents or the local
26       educational agency involved in such complaint shall have
         an opportunity for an impartial due process hearing,
27       which shall be conducted by the State educational agency
         or by the local educational agency, as determined by
28       State law or by the State educational agency.

(B) Resolution session

(i) Preliminary meeting

Prior to the opportunity for an impartial due process
hearing under subparagraph (A), the local educational
agency shall convene a meeting with the parents and the
relevant member or members of the IEP Team who have
specific knowledge of the facts identified in the
complaint--
(I) within 15 days of receiving notice of the
parents' complaint;
(II) which shall include a representative of the
agency who has decisionmaking authority on behalf of
such agency;
(III) which may not include an attorney of the local
educational agency unless the parent is accompanied
by an attorney; and
(IV) where the parents of the child discuss their
complaint, and the facts that form the basis of the
complaint, and the local educational agency is
provided the opportunity to resolve the complaint,

unless the parents and the local educational
agency agree in writing to waive such meeting, or
agree to use the mediation process described in
subsection (e) of this section.

***

(iii) Written settlement agreement

In the case that a resolution is reached to resolve the
complaint at a meeting described in clause (i), the
parties shall execute a legally binding agreement that
is--
(I) signed by both the parent and a representative of
the agency who has the authority to bind such agency;
and
(II) enforceable in any State court of competent
jurisdiction or in a district court of the United
States.

***

20 U.S.C. § 1415(f)(emphasis added).  Plaintiff asserts that the

underlined language confers jurisdiction upon this court to

adjudicate his dispute with CUSD over CUSD's compliance with the

settlement agreement reached prior to the due process hearing.

But, the plain language of § 1415(f) indicates that it only

**12**

applies to resolutions reached during a "resolution session" that satisfies the terms of § 1415(f)(i).  Unlike the mediation process set forth in subsection (e), which existed prior to the 2005 amendments, the entire "resolution session" section, subpart (f), was added by the 2005 amendments to IDEA.  Therefore, it is arguably impossible for a settlement agreement reached prior to the 2005 amendments to be covered by § 1415(f).

In support of his position that these amendments confer jurisdiction upon the district court to resolve his declaratory relief claim, Plaintiff cites an unpublished decision in which this provision was applied: *C.T. ex rel. D.T. v. Vacaville Unified Sch. Dist.*, 2006 WL 2092613 *6-7 (E.D. Cal., July 27, 2006).  In *C.T*, the plaintiff sought to enforce a settlement agreement that was allegedly made under the pre-2005 <u>mediation</u> provision (subsection (e)).  The *C.T.* court assumed, in the context of a motion to dismiss, that the settlement agreement had been entered into pursuant to the mediation process as alleged. Examining the statutory language, the *C.T.* court concluded that the relevant language in subsection (e) expressed Congress' unequivocal intent "to confer jurisdiction upon federal courts and an express right of action to parties over claims arising from agreements made pursuant to § 1415(e)(2)."  Although the settlement agreement in *C.T.* was reached during a mediation session in May 2004, *id*. at *2, prior to the addition of the language conferring jurisdiction upon the federal courts, the remainder of the mediation provision was in place as of 2004 in substantially the same form.

Plaintiffs do not here allege that the settlement agreement

**13**

in this case was reached during a formal mediation session under
§ 1415(e)(2).   Rather, Plaintiffs suggest that the settlement
agreement falls under the current"resolution session," language
now contained in § 1415(f)(1)(B)(ii).   However, as discussed, the
pre-2005 § 1415 contained no language referring to a "resolution
session."   It is not reasonable to assume that Congress intended
to confer jurisdiction retroactively upon the federal courts for
settlement agreements made prior to the 2005 amendments simply
because the agreements were concluded prior to the due process
hearing.   The judicial provision was added to confer jurisdiction
precisely because such jurisdiction did not previously exist.
The process of conducting a "resolution session" was described
for the first time in the 2005 amendments.   *C.T.* is
distinguishable.

     Congress specifically indicated that only those settlement
agreements reached "at a meeting described in clause (i) [a
resolution session, with specific procedural requirements]"
should be "enforceable...in a district court of the United
States."   Another district court, construing a similar argument
based on the same language, rejected a party's contention that
the specific jurisdictional language contained in §§ 1415(e) and
(f) should be extended to settlement agreements reached in other
contexts.   *Bowman v. District of Columbia*, 2006 WL 2221703
(D.D.C. Aug. 2, 2006).   The district court in *Bowman* reasoned:

> Perhaps it is true, as plaintiffs suggest, that a
> district court's exercise of subject matter
> jurisdiction over disputes involving settlement
> agreements like those in this case would be "a logical
> extension," Pls.' Opp'n at 4, of the jurisdictional
> provisions in § 1415 and would advance Congress's goal
> of facilitating non-judicial resolution of

**14**

> IDEIA-related disputes. But it is not the role of the
> courts to append new provisions to statutes whenever
> doing so might comport with some of Congress's goals.
> See *Brogan v. United States*, 522 U.S. 398, 408 (1998);
> *Nathan v. Smith,* 737 F.2d 1069, 1081 (D.C.Cir.1984).
> This is especially true when other parts of the Act
> indicate that Congress also wanted to encourage
> plaintiffs to resolve their disputes only through
> certain formal administrative procedures. See 20 U.S.C.
> § 1415(i)(D)(ii) (forbidding the awarding of attorneys'
> fees relating to an IEP Team meeting "unless such
> meeting is convened as a result of an administrative
> proceeding or judicial action, or, at the discretion of
> the State, for a mediation described in subsection (e)
> of this section."). The language that plaintiffs rely
> on is not ambiguous, nor would its literal application
> produce absurd or unjust results. Consequently, there
> is no reason to go beyond the application of the law as
> written. The court therefore declines to confer
> jurisdiction on itself where Congress has not done so.

*Id*. at *2.

Section 1415(f)(1)(B)(ii) does not alter the jurisdictional picture discussed in the prior memorandum decision.  The district court does not have jurisdiction to adjudicate Plaintiff's allegation that CUSD breached the settlement agreement, entered into prior to the effective date of the 2005 amendments and outside the framework of any alternative dispute resolution procedure previously or currently described in § 1415.

## 2. **IDEA Claims**.

Plaintiff's first cause of action alleges that CUSD violated the IDEA by failing to provide Plaintiff a FAPE during the 2001-02, 2002-03, and 2003-04 school years.  (SAC ¶¶ 24-28.)  The second cause of action alleges that CSUD violated the IDEA by failing to adhere to the settlement agreement.  (SAC ¶¶ 29-35.) Because the district court cannot determine whether the settlement agreement has been breached, it also arguably cannot adjudicate either of these claims, both of which turn on the

1   validity of the settlement.  The second cause of action directly

2   relies upon the premise that the settlement agreement is void

3   because of CUSD's alleged breach.  The first cause of action

4   alleges CUSD's pre-settlement conduct violates IDEA.  Any such

5   claims are barred until the still-operative settlement agreement

6   is declared void.

7       Nevertheless, even if these claims were not barred for this

8   reason, Plaintiff's IDEA claims must be dismissed on other

9   grounds.

10                  *a.    Exhaustion of Administrative Remedies.*

11      IDEA provides that:

12          Nothing in this chapter shall be construed to restrict
            or limit the rights, procedures, and remedies available
13          under the Constitution, the Americans with Disabilities
            Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of
14          the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et
            seq.], or other Federal laws protecting the rights of
15          children with disabilities, except that before the
            filing of a civil action under such laws seeking relief
16          that is also available under this subchapter, the
            procedures under subsections (f) and (g) of this
17          section shall be exhausted to the same extent as would
            be required had the action been brought under this
18          subchapter.

19  20 U.S.C. § 1415(l).  This provision has been interpreted by the

20  Ninth Circuit to mean that if a plaintiff has alleged injuries

21  that could be "redressed to any degree by the IDEA's

22  administrative procedures and remedies...exhaustion of those

23  remedies is required."  *Robb v. Bethel Sch. Dist. #403*, 308 F.3d

24  1047, 1050 (9th Cir. 2002).  "Exhaustion of the administrative

25  process [in IDEA cases] allows for the exercise of discretion and

26  educational expertise by state and local agencies, affords full

27  exploration of technical educational issues, furthers development

28  of a complete factual record, and promotes judicial efficiency by

                                  **16**

giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992).

Whether exhaustion is required in particular circumstances requires that a court examine the "nature of the alleged injuries," rather than "the specific remedy requested." *Robb*, 308 F.3d at 1050. "Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem." *Id*.

Here, the injuries alleged in Plaintiff's first and second claims all concern CUSD's failure to provide him with a FAPE. This is an injury that can be redressed by IDEA's procedures. Therefore, exhaustion is required. The question then becomes whether Plaintiff has either complied with the exhaustion requirement or is otherwise relieved of the responsibility.

With respect to compliance, it is undisputed that Plaintiff dismissed CUSD as a party on the first day of the due process hearing, which concerned the 2001-2002 through 2003-2004 school years, before the hearing was completed. (SAC at ¶¶ 17-18.) Plaintiff has not exhausted his administrative remedies with respect to his first cause of action.

Plaintiff also alleges in his second cause of action that CUSD failed to provide Plaintiff with a FAPE after entering into (and then allegedly breaching) the settlement agreement. These claims are also subject to the exhaustion requirement, as the allegation (that CUSD's conduct failed to provide a FAPE) may be

**17**

redressed by IDEA's administrative procedures.   There is no evidence indicating that Plaintiff has pursued administrative remedies with respect to any post-settlement conduct.

A party need not exhaust IDEA's administrative processes where resort to those processes would either be futile or inadequate.   *Hoeft*, 967 F.2d at 1303-04.   Here, Plaintiff argues that pursuing his administrative remedies would be futile because the California Office of Administrative Hearings (OAH) has determined that it has no jurisdiction to address compliance with settlement agreements entered into pursuant to the IDEA.   *See C.T.*, 2006 WL 2092613 at *8-*9 (finding that plaintiff was not required to exhaust because OAH lacks jurisdiction to determine that issue).   Defendant rejoins by pointing to examples of cases in which OAH has reviewed settlement agreements where they were relevant to a party's claims or defenses on the issue of a FAPE*. See Vacaville Unif. Sch. Dist*, OAH No. N2005070520.   (Attached to Plaintiff's request for judicial notice at Ex. A.)   Critically, even if Plaintiff is correct that OAH lacks jurisdiction to review the settlement agreement, this only would excuse Plaintiff from the requirement to exhaust his allegation that the settlement agreement has been breached.   This is wholly irrelevant to the question of whether plaintiff must exhaust his administrative remedies with respect to his underlying IDEA claims, if the settlement agreement is set aside by a court.

Plaintiff also argues that the exhaustion requirement should be excused here because it is improbable that he can obtain adequate relief within the administrative system.   Plaintiff contends that the administrative process would be <u>inadequate</u>

**18**

because:

> Should [a court] ultimately determine that the
> settlement agreement was breached, then, according to
> CUSD, Plaintiff's only remedy would be to reinitiate a
> due process proceeding, raising all claims that were
> previously released through the settlement agreement.
> However, CUSD's position would require the Plaintiff to
> be bounced back and forth between federal court and OAH
> – all due to the fact that CUSD failed to adhere to its
> obligations under the settlement agreement. Such a
> result is inequitable and would result in extraordinary
> delays in the provision of educational services to
> Plaintiff such that he would be harmed irreparably.
> Plaintiff has already been without any services
> provided by CUSD for well over a year and without
> services designed to address his needs for over five
> years. Plaintiff now has less then two years left of
> his schooling in which to make up more than five years
> of neglect on the part of CUSD. <u>Requiring Plaintiff to
> return to OAH to litigate the issues subject to the
> settlement agreement would both irreparably harm
> Plaintiff in his education and would not be adequate
> relief for Plaintiff given the anticipated delay of
> proceeding to OAH</u>.

> Moreover, such a circumstance would create the
> undesirable incentive of discouraging students engaged
> in special education due process hearings from settling
> for fear that the district will simply breach the
> agreement, force the student to court to have that
> breach identified by a court and then shunted back to
> OAH to begin the process anew.

(Doc. 39 at 8-9.)  But, Plaintiff cites no authority for the

proposition that the delay that would result from remand to the

administrative system is sufficient to warrant a finding that the

administrative process would be "inadequate."

### 3.   Section 504 & ADA Claims.

#### a.   *Cognizability of Plaintiff's Legal Theory.*

While IDEA provides a substantive right to a FAPE, Section

504 and the ADA prohibit intentional discrimination on the basis

of disability.  Section 504 provides:

> No otherwise qualified individual with a
> disability...shall, solely by reason of her or his
> disability, be excluded from the participation in, be

**19**

> denied the benefits of, or be subjected to
> discrimination under any program or activity receiving
> Federal financial assistance.

29 U.S.C. § 794(a).  The ADA similarly provides:

> [N]o qualified individual with a disability shall, by
> reason of such disability, be excluded from
> participation in or denied the benefits of services,
> programs, or activities of a public entity, or be
> subjected to discrimination by any such entity.

42 U.S.C. § 12132.

To make out a prima facie case under Section 504, he must

demonstrate that: (1) he "is a qualified individual with a

disability; (2) he "was denied the benefits of a program or

activity of a public entity receiving federal funds;" and (3) he

"was discriminated against based on [his] disability." *M.P. v.

Independent Sch. Dist., No. 721, New Prague, Minn.*, 439 F.3d 865,

867 (8th Cir. 2006)(citing *Christopher S. v. Stanislaus County

Office of Educ.*, 384 F.3d 1205, 1211-12 (9th Cir. 2004)( district

wide policy shortening school day for autistic children stated a

claim under § 504).  Although plaintiff correctly argues that he

is not required to plead all the elements of a prima facie case

in order to survive a motion to dismiss in federal court,[2]

dismissal can be based on the lack of a cognizable legal theory.

*SmileCare,* 88 F3d at 783.

CUSD argues that Plaintiff's allegations that CUSD

discriminated against Plaintiff by denying him a FAPE or by

---

[2]    CUSD mistakenly suggests that Plaintiff's Section 504
and ADA claims should be dismissed because they are "uncertain"
in that they generally claim that CUSD has a "pattern, policy,
and practice" of failing to address the individual needs of its
autistic students.  However, under the liberal pleading standard
set forth in Federal Rule of Civil Procedure 8, dismissal is not
warranted on this ground.

otherwise failing to provide him with adequate services is not a cognizable legal theory under either Section 504 or the ADA. First CUSD asserts that Section 504 never applies where a plaintiff is merely alleging denial of a FAPE. *Sellers by Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 529 (4th Cir. 1998)("To prove discrimination in the education context, 'something more than a mere failure to provide [a FAPE] required by IDEA must be shown.")). However, if a plaintiff alleges "that they were excluded from participation in the IDEA, denied the benefits of the IDEA, or subjected to discrimination under the IDEA, solely by reason of their disability," this might support a claim under § 504. *Mark H. v. Lemahieu*, 372 F. Supp. 2d 591, 603 (D. Haw. 2005). Here, to the extent that Plaintiff is arguing that he was subject to discrimination under the IDEA because he is autistic, as opposed to having a type of disability for which appropriate services are routinely provided, he has stated a cognizable § 504 claim. Because the ADA regulations adopt the standards found in § 504, s*ee* 28 C.F.R. § 35.103(a), the same conclusion applies to his ADA claim.

### b. Exhaustion of Administrative Remedies.

To the extent that Plaintiffs seek relief that is also available under the IDEA, Rehabilitation Act claims and ADA claims are subject to the same exhaustion of administrative remedies requirement as relief that sought under the IDEA. The exhaustion requirement contained within the IDEA is:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et

**21**

seq.], or other Federal laws protecting the rights of children with disabilities, <u>except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter</u>.

20 U.S.C. § 1415(1). Here, Plaintiff's Section 504 and ADA claims are based on the same conduct that is the subject of their IDEA claims for which relief is available under IDEA. *See also Weber v. Cranston Sch. Comm.,* 212 F.3d 41, 51-52 (1st Cir. 2000)(requiring plaintiff to exhaust IDEA procedures before filing retaliation claim under Section 504).

Exhaustion may be excused when an ADA or § 504 claim alleges a "systemic" violation of the IDEA, but, to qualify as "systemic," the alleged violation must "implicate[] the integrity or reliability of the IDEA dispute resolution procedures themselves, or require[] restructuring the education system itself in order to comply with the dictates of the Act." *Doe v. Ariz. Dept. of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997). Plaintiff has not alleged such a systemic failure.

For the same reason that Plaintiff's IDEA claims must be dismissed for failure to exhaust, dismissal of his section 504 and ADA claims is required.

**4.   Unruh Act Claim.**

Finally, Plaintiff alleges that CUSD's conduct violates California's Unruh Civil Rights Act, which provides, in pertinent part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race,

**22**

> color, religion, ancestry, national origin, disability,
> medical condition, marital status, or sexual
> orientation are entitled to the full and equal
> accommodations, advantages, facilities, privileges, or
> services in all business establishments of every kind
> whatsoever.

Cal. Civ. Code § 51(a).

### a. Uncertainty.

Defendant argues that Plaintiff's Unruh act claim must be pled with the specificity that would be required if the claim had been brought in state court.  Under California's Tort Claims Act, "every fact material to the existence of [a public entity's] statutory liability must be pleaded with particularity." *Lopez v. S. Cal. Rapid Tansit Dist.*, 40 Cal. 3d 780, 795 (1985).  But, the liberal notice pleading standard set forth in Federal Rule of Civil Procedure 8 applies to claims brought under the Unruh Act in federal court.  *See Marsh v. San Diego County*, 432 F. Supp. 2d 1035, 1059 (S.D. Cal. 2006).

### b. Failure to "Establish a Prima Facie Case."

Defendant next asserts that Plaintiff's Unruh Act claim fails because Plaintiff has not alleged that he was treated differently than a non-disabled individual and because he has not pleaded that CUSD intentionally discriminated against him.  Again it is not necessary for Plaintiff to plead all of the elements of his discrimination claims.

### c. Exhaustion

CUSD also argues that exhaustion is required for Plaintiff's Unruh Act claim.  Although acknowledging that the Unruh Act itself contains no exhaustion requirement, CUSD asserts that exhaustion is nevertheless required because it is required under

23

1  the IDEA.  The relevant provision of the IDEA that requires

2  exhaustion in Rehabilitation Act and ADA cases provides:

3           Nothing in this chapter shall be construed to restrict
           or limit the rights, procedures, and remedies available
4           under the Constitution, the Americans with Disabilities
           Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of
5           the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et
           seq.], or other Federal laws protecting the rights of
6           children with disabilities, except that before the
           filing of a civil action under such laws seeking relief
7           that is also available under this subchapter, the
           procedures under subsections (f) and (g) of this
8           section shall be exhausted to the same extent as would
           be required had the action been brought under this
9           subchapter.

10  20 U.S.C. § 1415(l).  This provision specifically concerns

11  "rights, procedures, and remedies available under the

12  Constitution, the Americans with Disabilities Act of 1990 [42

13  U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of

14  1973 [29 U.S.C.A. § 791 et seq.], or other <u>Federal</u> laws

15  protecting the rights of children with disabilities...."  It does

16  not address state laws that might protect children with

17  disabilities.  CUSD points to no other authority that requires

18  exhaustion of administrative remedies prior to the filing of

19  Plaintiff's Unruh act claim.  Whether it is appropriate for this

20  court to exercise supplemental jurisdiction over this state law

21  claim is a separate question that is addressed below.

22           ***d.   Treble Damages***

23       CUSD also argues that Plaintiff "fails to state a claim for

24  treble damages."  This contention is construed as a motion to

25  strike the request for treble damages.

26       California Government Code § 818 permits a plaintiff who

27  alleges injury caused by a public entity to recover actual, but

28  not punitive, damages for that injury.  *See Kizer v. County of*

                                 **24**

*San Mateo*, 53 Cal. 3d 139, 145 (1991).  CUSD is a public entity entitled to the protection of § 818.  Treble damages provisions in specific statutes are not intended to abridge the § 818 protection unless the legislature expressly states an intention to do so.  *Wells v. One2One Learning Foundation*, 39 Cal. 4th 1164, 1196 (2006)(finding that treble damages provision found within California's False Claims Act did not abridge public entity's immunity from punitive damages set forth in § 818).

The relevant damages provision in the Unruh Act specifies that any defendant who is liable under the Unruh act, is "liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorneys's fees that may be determined by the court in addition thereto...."  Cal. Civil Code § 52.  This provision expresses no intention to apply a punitive damages provision to a public entity.  Therefore, under *Wells*, § 52 does not abridge the protections contained within California Government Code § 818.  Treble damages are not available against CUSD.  The allegations for treble damages are stricken.

### 5.    *Exercise of Supplemental Jurisdiction.*

Having found that the district court does not have federal question jurisdiction over Plaintiff's declaratory relief claim and that Plaintiff's federal claims, brought under IDEA, Section 504, and the ADA, must be dismissed for failure to exhaust, the remaining question is whether the district court should exercise supplemental jurisdiction over Plaintiff's Unruh act claim and/or

**25**

his state law claim for breach of contract.

In response to the last round of motions to dismiss in this case, where all federal causes of action had been dismissed, the district court reasoned:

> A district court may, in its discretion, decline to exercise supplemental jurisdiction over state law claims when all remaining federal claims have been dismissed. *See* 28 U.S.C. § 1367(c)(3). It is appropriate to decline Supplemental jurisdiction under § 1367(c)(3) when it serves objectives of economy, convenience and fairness to the parties, and comity. *Trustees of Construction Industry and Laborers Health, et al. v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (citation omitted). Among other considerations, "[n]eedless decisions of state law should be avoided." *Id.*

> Kokkonen provides guidance. There, Kokkonen filed suit in state court against an insurance company for terminating his general agency agreement. The defendant removed the case to federal court on the basis of diversity jurisdiction. *Id.* at 376. The case was resolved by a settlement agreement, but the agreement did not provide that the district court retain enforcement jurisdiction. *Id.* at 376. Later, the parties disagreed over the scope of certain obligations created by the settlement agreement. Kokkonen moved in the district court to enforce the agreement's terms. The Defendant objected on jurisdictional grounds. The Supreme Court examined whether it was appropriate for the district court to exercise ancillary jurisdiction, a doctrine that "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." Generally ancillary jurisdiction is asserted "for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379-80 (citations omitted). Although the judicially created doctrine of ancillary jurisdiction is not exactly parallel to the statutory factors to be considered in deciding whether to exercise supplemental jurisdiction, the Supreme Court's reasoning is instructive. Applying the two ancillary jurisdiction factors, the Court reasoned that "the facts underlying [the] dismissed claim for breach of [the] agency agreement and those underlying [the] claim for breach of the settlement agreement have nothing to do with

each other; it would neither be necessary nor particularly efficient that they be adjudicated together." *Id*. at 380.

Plaintiff suggests that there <u>are</u> practical considerations here that warrant departure from *Kokkonen's* reasoning. Essentially, Plaintiff maintains that forcing his declaratory judgment action back to state court would needlessly complicate the course of the litigation:

> If, as CUSD suggests, Plaintiff's action may only be maintained in state court, then Plaintiff will be forced to file a state court action declaring CUSD's consideration under the Settlement Agreement forfeit[]. If Plaintiff is successful, then Plaintiff will be forced to take two parallel routes[:] (1) to refile a due process [state administrative] proceeding against CUSD in order to demonstrate that CUSD violated the IDEA and to obtain an order requiring CUSD to provide services since it refuses to do so in accordance with the Settlement Agreement; and (2) to refile a discrimination claim in this [c]ourt for the violations of law by FRESNO COUNTY which CUSD is rightfully held liable for under the IDEA and Section 504.

(Doc. 20 at 4.)

Plaintiff's argument has some practical merit. It might be more efficient for the claim to enforce the settlement agreement to remain in federal court if, at the end of the day, Plaintiff has to return to federal court to ultimately adjudicate his rights under the DEA. However, the IDEA's statutory scheme is set up to give the state administrative system the first chance to correct any mistakes in administration of federally funded programs for special needs students. *See Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992)("Exhaustion of the administrative process [in IDEA cases] allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.").

The settlement agreement between Plaintiffs and CUSD dismissed CUSD as a defendant from the state due process administrative hearing <u>before that hearing was completed</u>. As Defendant correctly points out, even if the settlement agreement is nullified, Plaintiff would not be eligible to directly return to federal court.

27

First, Plaintiff would be required to exhaust his administrative remedies against CUSD.[3]  *See id.; see also* 20 U.S.C. § 1415(f).  The existence of this exhaustion requirement in connection with the "traditionally strong state and local interest in education, as reflected in the statute's emphasis on state and local responsibility," *Hoeft*, 967 F.2d at 1302, counsel against the exercise of supplemental jurisdiction over Plaintiff's federal declaratory relief claim.

Nothing has changed since the issuance of that ruling to warrant a different conclusion.  For all these reason, supplemental jurisdiction will not be exercised over either Plaintiff's Unruh act claim or his state-law breach of settlement agreement claim.

## V.   CONCLUSION

For the reasons set forth above, Plaintiff's second amended complaint is dismissed in its entirety, without prejudice.

IT IS SO ORDERED.

**Dated:   March 28, 2007**                    **/s/ Oliver W. Wanger**
b2e55c                                        UNITED STATES DISTRICT JUDGE

---

[3]    Plaintiff also suggests that he "will simply need to amend his action in federal court in order to allege a discrimination claim against CUSD for the violations of law by Fresno county which CUSD is rightfully held liable for under the IDEA and Section 504." (Doc. 20 at 4.)  But, Plaintiffs offer no authority to support the proposition that any such claim would be exempt from the exhaustion requirements.

28